**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                    **SEALED INDICTMENT**

**CARLINE CENEUS**
      **a/k/a "Carline Bontemps"**
**CABIOCH BONTEMPS,**
**and**
**WILLY PAUL EDOUARD**
_____/

1: 10 CR 27 SPM/AK

**THE GRAND JURY CHARGES:**

<u>**COUNT ONE**</u>

<u>**I.  INTRODUCTION**</u>

1.      Carline Hot Pickers, Inc., a for-profit corporation, incorporated under

Florida law, with its principal place of business at 300 NW 127th Street, North Miami,

Florida, is a labor recruiting company owned and operated by defendant **CARLINE**

**CENEUS.** Defendant **CABIOCH BONTEMPS** is the brother of defendant **CENEUS.**

Defendant **BONTEMPS**  supervises workers and assists in managing Carline Hot

Pickers, Inc.

2.      Puroul Picking Inc., a for-profit corporation, incorporated under Florida

law, with its principal place of business at 1532 NE 181 Street, North Miami Beach,

Florida, is a labor recruiting company owned and operated by defendant **WILLY PAUL EDOUARD**.

## II.  CHARGE

Between in or about January 2008, and in or about November 2008, in the Northern District of Florida and elsewhere, the defendants,

**CARLINE CENEUS,**
**CABIOCH BONTEMPS,**
**and**
**WILLY PAUL EDOUARD,**

did knowingly and willfully combine, confederate, conspire, and agree with one another and other persons, to commit an offense against the United States, that is, to hold Haitian nationals in a condition of forced labor by knowingly providing and obtaining the labor or services of the Haitian nationals by means of:

(a)     any scheme, plan, and pattern intended to cause the person to believe that, if the person did not perform such labor and services, that person and another person would suffer serious harm and physical restraint; and

(b)     the abuse and threatened abuse of law and the legal process,

in violation of Title 18, United States Code, Section 1589 (a) (2) and (3) (2004) (amended by Public Law 106-386, effective December 23, 2008 and recodified as Title 18, United States Code, Section 1589 (a)(3) and (4)).

2

### III. Manner and Means

1.      It was part of the conspiracy that defendants **CARLINE CENEUS,**

**CABIOCH BONTEMPS, WILLY PAUL EDOUARD**, and other co-conspirators,

entered into a business venture in or about early 2008, and continuing through late 2008,

in the Northern District of Florida and elsewhere, to bring workers from Haiti to the

United States under the federal seasonal and temporary H-2A non-immigrant agricultural

guest worker program ("H2A program") to pick beans on farms in Alachua County,

Florida.

2.      It was part of the conspiracy that defendant **CARLINE CENEUS** and co-

conspirators traveled to Haiti in or about May 2008, to recruit approximately 50 Haitian

nationals to come to the United States to pick beans by enticing the Haitian nationals with

false promises of high steady wages and free room and board, for three years, each year

working six months of seasonal employment, culminating in permanent residency in the

United States.

3.      It was part of the conspiracy that defendants **CARLINE CENEUS,**

**WILLY PAUL EDOUARD**, and co-conspirators traveled to Haiti in or about September

2008, through in or about October 2008, to recruit approximately 60 Haitian nationals to

come to the United States to pick beans by enticing the Haitian nationals with false

promises of high steady wages and free room and board, for three years, each year

3

working six months of seasonal employment, culminating in permanent residency in the United States.

      4.     It was further part of the conspiracy that defendants **CARLINE CENEUS, CABIOCH BONTEMPS, WILLY PAUL EDOUARD**, and other co-conspirators knew each Haitian worker paid substantial recruitment fees which included their air fare, requiring them to incur substantial debts through loan sharks to secure the jobs in the United States.

      5.     It was further part of the conspiracy that defendants **CARLINE CENEUS and CABIOCH BONTEMPS** required the workers to remain available, but only provided sporadic work for many of the Haitian workers, did not pay the workers the promised wages, and instead paid the workers based on the scant quantity of crops available for harvest, making it impossible for the Haitian workers to repay their debts in Haiti.

      6.     It was further part of the conspiracy that defendants **CARLINE CENEUS and WILLY PAUL EDOUARD** confiscated the Haitian workers' passports and visas when they arrived in the United States, thereby limiting the workers' freedom of movement.

      7.     It was further part of the conspiracy that defendants **CARLINE CENEUS, CABIOCH BONTEMPS, and  WILLY PAUL EDOUARD** under fed the Haitian

workers, supplied substandard housing and few beds, and denied necessary medical care, causing the workers to suffer chronic hunger, weight loss, illnesses, and fatigue.

8.     It was further part of the conspiracy that defendants **CARLINE CENEUS and CABIOCH BONTEMPS** disregarded the health and well-being of the Haitian workers by directing them to pick beans in fields that had recently been sprayed with chemicals and smelled of such chemicals, causing several workers to become sick, vomit, and suffer blisters to their skin, in some instances resulting in permanent scars.

9.     It was further part of the conspiracy that defendants **CARLINE CENEUS and CABIOCH BONTEMPS** directed the Haitian workers to lie to federal investigators and to hide from federal investigators so the Haitian workers would not be able to seek help or report their circumstances.

10.     It was further part of the conspiracy that defendants **CARLINE CENEUS, CABIOCH BONTEMPS, and WILLY PAUL EDOUARD** threatened to deport or send to Haiti workers who complained about inadequate work, pay, food, or confiscation of passports, all of which made the Haitian workers fear the defendants.

### IV. Overt Acts

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, at least one of the co-conspirators committed or caused to be committed at least one of the following overt acts, among others, in the Northern District of Florida and elsewhere:

1.      Between on or about March 17, 2008 and March 19, 2008, defendant

**CARLINE CENEUS**, signing as owner for Carline Hot Pickers, Inc., submitted to the

U.S. Department of Labor Employment and Training Administration an Application for

Alien Employment Certification (Form 750-ETA Case No. A-07332-04948) for 50 farm

workers to harvest beans and perform related tasks for seasonal and temporary jobs

between on or about May 1, 2008 through November 28, 2008, 40 hour work weeks at

$8.82 an hour; and defendant **CENEUS** certified under penalty of perjury that the wage

paid to any alien would be equal to or exceed prevailing wage and that the job

opportunity's terms, conditions, and occupational environment were not contrary to

Federal, State, or local law.

2.      On or about April 1, 2008, defendant **CARLINE CENEUS**, as owner of

Carline Hot Pickers, Inc., signed an Agricultural and Food Processing Clearance Order

(Form 790) certifying that the job order described the actual terms and conditions of

employment being offered by the defendant and that it contained all the material terms

and conditions of the job.

3.      Between on or about April 1, 2008 and on or about May 21, 2008, defendant

**CARLINE CENEUS**, and other co-conspirators, traveled to Haiti and recruited

approximately 50 Haitian nationals to come to the United States to pick beans promising

applicants they would earn $8.82 an hour, work 40 hours a week for three years of six

months a year of seasonal work, and culminating in permanent residency in the United States.

4.      Between on or about May 7, 2008 and on or about May 18, 2008, defendant **CARLINE CENEUS**, while in Port-au-Prince, Haiti, collected approximately $3,000 cash from each of approximately 50 Haitian applicants to secure the bean picker jobs; defendant **CARLINE CENEUS** then required the Haitian applicants to sign statements that they had not given defendant **CARLINE CENEUS** any money; and defendant **CENEUS** refused to give the Haitian applicants receipts for the cash they paid.

5.      Between in or about May 2008 and in or about June 2008, MS, a Haitian worker, told defendant **CENEUS** that she would have to borrow money to pay the recruitment fees; that she needed to make certain she would earn enough money to repay the debt; and defendant **CENEUS** responded by telling her not to worry.

6.      In or about May 2008, in Haiti, defendant **CARLINE CENEUS** personally collected $3,400 in cash from DR, a Haitian national, in the presence of the loan shark who delivered the cash, then defendant **CARLINE CENEUS** took DR's passport.

7.      In or about May 2008, defendant **CARLINE CENEUS**, and other co-conspirators, instructed the Haitian applicants to lie to U.S. Embassy personnel in Haiti during their visa interviews, specifically not to mention that they paid any fees to obtain their bean picker jobs.

7

8.      Between on or about May 17, 2008 and on or about May 21, 2008, defendant **CARLINE CENEUS** confiscated the passports of approximately 50 arriving Haitian workers in Miami, Florida, in the Southern District of Florida.

9.      In or about May 2008, defendants **CARLINE CENEUS and CABIOCH BONTEMPS** informed the Haitian workers that they would not be paid $8.82 an hour as promised but $3.50 a sack for beans picked in Alachua County, in the Northern District of Florida.

10.     Between or about May 2008 and in or about July 2008, defendant **CARLINE CENEUS** told the Haitian workers in Alachua County, in the Northern District of Florida, they were not allowed to leave, and not allowed to go outside because she had their passports.

11.     Between in or about May 2008 and in or about June 2008, defendant **CARLINE CENEUS** directed the Haitian workers to hide to avoid inspectors and to lie to federal agents who came to farms in Alachua County, Florida and to say everything was going well and that they were happy.

12.     In or about June 2008, defendant **CARLINE CENEUS** made the Haitian workers put on a show for federal inspectors, dancing and playing drums, when labor inspectors came to farms where the Haitians were working, and **CENEUS** told the Haitian workers to look happy or the inspectors would send them back to Haiti.

13.     Between in or about May 2008 and in or about July 2008, defendant **CABIOCH BONTEMPS** interpreted for federal inspectors who came to farms in Alachua County, Florida and he later told the Haitian workers that federal inspectors said that defendants **CARLINE CENEUS and CABIOCH BONTEMPS** only had to feed the Haitian workers the first week and afterwards the Haitian workers were responsible for their own food and housing and he stated that if the Haitian workers continued to complain they would be sent back to Haiti.

14.     In or about June 2008, defendant **CABIOCH BONTEMPS** transported the Haitian workers to a Wal-mart to hide the workers from inspectors because at the time there were no crops to harvest and the workers were not being paid.

15.     In or about June 2008, defendant **CARLINE CENEUS** told the Haitian workers that if inspectors arrived the Haitian workers should say that defendants **CARLINE CENEUS and CABIOCH BONTEMPS** had been paying for their room and board and if they did not she would send the Haitian workers back to Haiti.

16.     Between in or about May 2008 and in or about June 2008, MS, a Haitian worker, complained to defendant **CARLINE CENEUS** that she was feeling ill from cooking over an open fire and needed to see a doctor but **CENEUS** refused MS's requests to seek medical attention and threatened to send MS back to Haiti.

17.     Between in or about May 2008 and in or about June 2008,  MS, a Haitian worker, complained to defendant **CARLINE CENEUS** that the trailer where she was

required to sleep in Alachua County, Florida, had snakes under it and **CENEUS** yelled at her and threatened to send her back to Haiti.

18.     Between in or about May 2008 and in or about June 2008, defendant **CARLINE CENEUS** made the Haitian workers pick beans in fields in Alachua County, Florida, in the Northern District of Florida, that had been recently sprayed with chemicals and had a strong noxious odor, and Haitian workers including MS and MCM, developed blisters after working in the fields and MS suffered permanent scars on her legs, right arm, stomach, and back.

19.     Between in or about May 2008 and in or about November 2008, defendants **CARLINE CENEUS and CABIOCH BONTEMPS** deducted charges for housing and food  from the Haitian workers' cash earnings.

20.     Between approximately May 2008 and in or about November 2008, defendants **CARLINE CENEUS and CABIOCH BONTEMPS** regularly threatened the Haitian workers that they would call immigration and have them deported or send them back to Haiti for complaining about insufficient work or pay, substandard living conditions, lack of food, and lack of medical attention.

21.     In or about May or June 2008, defendant **CABIOCH BONTEMPS** locked DR, a Haitian worker, inside a trailer in Alachua County, Florida, and while he raped her defendant **BONTEMPS** told DR he would give her money toward her debt, and that she

10

should not tell anyone or she would get in trouble and he would make sure she would not be able to return to the United States to work in subsequent years.

22.    In or about July or August 2008, defendant **CABIOCH BONTEMPS** drove DR, a Haitian worker, to a secluded and wooded area in Alachua County, Florida, locked the doors of the car then raped DR, stating that he was helping DR repay her debt.

23.    In or about mid July 2008, defendant **CARLINE CENEUS** abandoned the Haitian workers in their Alachua County, Florida, housing without employment, income, or food.

24.    Between on or about July 22, 2008 and on or about August 5, 2008, defendant **WILLY PAUL EDOUARD**, signing as owner of Puroul Picking Inc., submitted to the U.S. Department of Labor Employment and Training Administration an Application for Alien Employment Certification (Form 750-ETA Case No. A-07332-04948), for 60 farm workers to harvest beans and perform related tasks for positions available to fill between September 8, 2008 through December 20, 2008, 40 hour work weeks at $8.82 an hour; and certifying under penalty of perjury that the wage paid to any alien would equal or exceed prevailing wage and that the job opportunity's terms, conditions, and occupational environment are not contrary to Federal, State, or local law.

25.    On or about July 13, 2008, defendant **CABIOCH BONTEMPS** obtained the signature of a farm owner in Alachua County, Florida, on a letter that stated the farm

owner needed 60 workers, to support the application of Puroul Picking Inc. submitted to the U.S. Department of Labor Employment and Training Administration for H2A workers, although both the farmer and defendant **CABIOCH BONTEMPS** knew the farmer did not need 60 workers for the period of time stated in the letter.

26.     Between on or about September 13, 2008 and on or about October 25, 2008, defendants **CARLINE CENEUS and WILLY PAUL EDOUARD** traveled to Haiti to recruit approximately 60 Haitian nationals to come to the United States to pick beans as H2A guest workers for Puroul Picking Inc, promising the Haitian applicants they would earn $8.82 an hour for six months of full time seasonal work for three years, culminating in permanent residency in the United States.

27.     Between on or about September 13, 2008 and on or about October 25, 2008, defendants **CARLINE CENEUS and WILLY PAUL EDOUARD** collected approximately $4,000  from each Haitian applicant to secure the bean picker jobs, then directed the Haitian applicants to lie to U.S. Embassy personnel in Haiti during their visa interviews, and specifically not to mention that they paid any fees to obtain their bean picker jobs.

28.     Between on or about September 13, 2008 and on or about October 25, 2008, defendant **WILLY PAUL EDOUARD**  told  RP, a Haitian worker, that she would make enough money in three months in the United States to pay off her loan and displayed 15 Haitian passports to her stating that each person had paid the fee.

29.     Between on or about September 13, 2008 and on or about October 25, 2008, while in Haiti, defendants **CARLINE CENEUS and WILLY PAUL EDOUARD** told the Haitian applicants that they were both United States citizens, the workers were not, and accordingly the Haitian applicants had no rights in the United States.

30.     Between on or about September 13, 2008 and on or about October 25, 2008, while in Haiti, defendant **CARLINE CENEUS** told Haitian applicants that some of the former Haitian workers who came to the United States complained and she had them deported; and that if any of the Haitian applicants came to the United States and complained she would deport them.

31.     Between on or about September 13, 2008 and on or about October 25, 2008, defendants **CARLINE CENEUS and WILLY PAUL EDOUARD** told the Haitian applicants to lie to U.S. Embassy personnel in Port-au-Prince, Haiti during their visa interviews, specifically not to mention that they had paid any fees to obtain their bean picker jobs.

32.     On or about September 20, 2008, defendant **WILLY PAUL EDOUARD** confiscated the Haitian workers' passports, including the passport belonging to JM, a Haitian worker, in Miami, Florida, in the Southern District of Florida and told the workers that if they tried to escape without any documentation none of the workers would be allowed to do anything.

13

33.     On or about September 20, 2008, defendant **WILLY PAUL EDOUARD** in Miami, Florida, told the Haitian workers they would only earn $5.00 an hour, not the $8.82 promised hourly wage.

34.     On or about September 20, 2008, defendant **WILLY PAUL EDOUARD** told the Haitian workers, residing temporarily in Miami, Florida, not to talk to anyone outside of the house.

35.     In or about November 2008, defendant **CABIOCH BONTEMPS**, in Alachua County, Florida, instructed the Haitian workers that inspectors were coming in the next few days and to deny they paid any fee for their jobs.

36.     In or about November 2008, defendant **CABIOCH BONTEMPS**, in Alachua County, Florida, told the Haitian workers that inspectors were coming and they may deport them and defendant **CABIOCH BONTEMPS** moved five of the Haitian workers to a motel where they stayed for a day while the other Haitian workers scattered.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

1.     The allegations contained in Sections I, III and IV of Count One of this Indictment are incorporated herein and by reference.

2.     Between in or about May 2008 and in or about July 2008, in the Northern District of Florida and elsewhere, the defendant,

**CARLINE CENEUS,**

14

did knowingly and willfully hold EE, a Haitian national, in a condition of document servitude by knowingly destroying, concealing, removing, confiscating, and possessing any actual or purported passport or other immigration document, or any other actual purported government identification document of EE:

    (a)    in the course of a violation of Title 18, United States Code, Section 1589;

    (b)    with intent to violate Title 18, United States Code, Section1589; and

    (c)    to prevent and restrict or attempt to prevent and restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor and services of that person, when the person is or has been a victim of a severe form of trafficking in persons.

In violation of Title 18, United States Code, Section 1592.

### COUNT THREE

### I. INTRODUCTION

1.    Between on or about March 3, 2008 and in or about May 2008, defendant **CARLINE CENEUS** engaged in a business venture to bring Haitian nationals to the United States under the H2A agricultural guest worker program.  At all times material to this Indictment:

2.    The United States Department of Labor (DOL) was responsible  for administrating, regulating and enforcing the provisions of 20 CFR Part 655, Subpart B, which governs the labor certification process for temporary employment of aliens in the

United States under the H2A classification and requires that the Certifying Officer of the Employment and Training Administration (ETA) issue temporary labor certifications on behalf of the Secretary of Labor. DOL adjudicates all petitions for temporary foreign workers to fulfill temporary or seasonal agricultural jobs that could not be filled by United States Citizens.  An H2A temporary labor certification is advisory to USCIS and where the employer is notified by the DOL that certification is denied or cannot be made, the employer may submit countervailing evidence, according to 8 CFR Part 214.2(h) directly to United States Citizenship and Immigration Services ("USCIS").

   3.  USCIS is the federal agency that oversees lawful immigration to the United States. USCIS adjudicates the petitions and applications of potential immigrants and is therefore responsible for administering, regulating, and enforcing the various visa programs, petitions and applications available to aliens coming to or residing in the United States, including the H2A temporary and seasonal agricultural worker visa.

   4.  Under United States laws and regulations, non-citizens of the United States ("aliens") are not permitted to work in the United States unless they obtain employment authorization from the United States Government.

    a. Aliens living outside of the United States can apply for a non-immigrant visa referred to as an H-2A visa. The H-2A visa permits aliens to perform agricultural work in the United States for a specified, temporary period of time.

16

b.  An employer seeking to employ temporary foreign employees is required to use a process involving at least four steps and at least four government entities: a state labor agency, DOL, Department of Homeland Security USCIS, and U.S. Department of State.

c.  The state workforce agency in Florida is the Agency for Workforce Innovation (AWI).

5.  A prospective employer is required to file a DOL Application for Alien Employment Certification ("ETA-750") with the state labor agency, in this instance, AWI. The application sets forth the name and address of the employer, actual location where aliens will work, the job description, the rate of pay, qualifications required, number of available jobs, and dates of expected employment. The employer must also describe in detail efforts to recruit qualified United States workers and the results of those efforts. The ETA-750 application must be completed and signed under penalty of perjury. The state labor agency reviews the ETA-750 to ensure that the employer is offering the prevailing wage for the job listed in the ETA-750.  The ETA-750 is reviewed by the state labor agency and forwarded to DOL for consideration and certification.

6.  If DOL approves the ETA-750, DOL issues the certified ETA-750 with an original stamped certification and a "Final Determination Letter," indicating that the request for temporary foreign workers has been certified based upon the ETA-750 and its supporting documentation.

17

7.  After DOL issues a certified ETA-750, the employer must submit the original ETA-750, along with a Petition for Non-Immigrant Worker ("I-129") to USCIS. The I-129 petition is signed under penalty of perjury.  In the I-129 petition, the employer represents that there is a specific job to fill and describes the nature, location, terms, and requirements of the job.  If USCIS approves the I-129 petition,  USCIS  designates the number of H-2A temporary or seasonal foreign worker positions approved on the I-129 and the employer is notified of the approval.  USCIS generates a Notice of Action ("I-797") and a copy is sent to the employer and the appropriate United States Embassy.

8. Aliens seeking to enter the United States as H-2A temporary or seasonal workers are required to complete an Application for a Non-immigrant Visa ("DS-156"). The alien must submit the DS-156 form to the United States Embassy or United States Consulate in the country from which they are applying.

9.  When the appropriate United States Embassy or Consulate receives the approved I-797 from USCIS, the United States Department of State may issue H-2A visas to qualified aliens.

10.  When an alien receives an H-2A visa, the alien is permitted to apply for entry into the United States but must work only for the petitioning employer.

## II. CHARGE

1.  The allegations contained in Sections I, III, and IV of Count One of this Indictment are incorporated herein and by reference.

18

2.  Between on or about March 3, 2008 and in or about May 2008, in the Northern District of Florida and elsewhere, the defendant,

**CARLINE CENEUS**,

did knowingly subscribe as true a false statement with respect to a material fact in any application to wit: paragraphs 10, 11, 12, 23b, 23c, 23d, 23g and 24 of the ETA-750 Application for Alien Employment Certification, and paragraphs 4, 8, 11, and 21 of the ETA-790 Agricultural and Food Processing Clearance Application for Alien Employment Certification, and other documents required by the immigration laws or regulations prescribed thereunder; and by knowingly presenting to a United States federal government agency or department any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact.

All in violation of Title 18, United States Code, Section 1546 (a).

## COUNT FOUR

### I.  INTRODUCTION

1.    The allegations contained in Count One, Section I, and Count Three, Sections I and II, of this Indictment are incorporated herein and by reference.

### II. CHARGE

Between on or about July 13, 2008 and in or about October 2008, in the Northern District of Florida and elsewhere, the defendants,

19

**CARLINE CENEUS,**
**CABIOCH BONTEMPS,**
**and**
**WILLY PAUL EDOUARD,**

did knowingly and willfully combine, confederate, conspire, and agree with one another

and others persons to commit an offense against the United States, that is, to knowingly

subscribe as true a false statement with respect to a material fact in any application, to

wit: the ETA-750 Application for Alien Employment Certification, the ETA-790

Agricultural and Food Processing Clearance Application for Alien Employment

Certification, and other documents required by the immigration laws or regulations

prescribed thereunder; and to knowingly present to a United States federal government

agency or department any such application, affidavit, or other document which contains

any such false statement or which fails to contain any reasonable basis in law or fact, in

violation of Title 18, United States Code, Sections 1546(a).

## III.  OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy,

at least one of the co-conspirators committed or caused to be committed at least one of

the following overt acts, among others, in the Northern District of Florida and elsewhere

as set forth in Count One, paragraphs 24 through 28, 31, 33, 35 and 36, of this

Indictment, and incorporated herein and by reference.

20

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL

REDACTED

June 22, 2010
DATE

THOMAS F. KIRWIN
UNITED STATES ATTORNEY

FRANK WILLIAMS
Assistant United States Attorney

THOMAS E. PEREZ
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

SUSAN FRENCH
Trial Attorney
Human Trafficking Prosecution Unit
Civil Rights Division

21